# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| WILLIE KEY and LUANN KEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:11-CV-362-TLS |
| | ) | |
| UNITED STATES STEEL | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Willie Key brought this action against his former employer, United States Steel Corporation, for failing to accommodate his disability in violation of the Americans with Disabilities Act (ADA) and for discriminating against him on the basis of his race in violation of Title VII of the Civil Rights Act. The Plaintiff also alleges that the Defendant's actions constitute the tort of intentional infliction of emotional distress. Plaintiff Luann Key joins in the intentional infliction of emotional distress claim and asserts her own loss of consortium claim.[1]

The Defendant has filed a Motion for Summary Judgment [ECF No. 24], requesting judgment as a matter of law on all of the Plaintiffs' claims. The Plaintiffs oppose the Defendant's Motion and Defendant Willie Key has filed his own Motion for Summary Judgment as to Liability [ECF No. 28], in which he contends that no genuine issues of material fact exist on the issue of whether he was terminated from his job due to his disability. The Defendant also seeks to strike the Affidavit of Dr. Mohammed Zeitoun [ECF No. 41], which the Plaintiff designated as evidentiary support for his assertion that he suffers from an ADA-qualifying disability.

---

[1] Although there are two plaintiffs, references to "the Plaintiff" in this Opinion and Order refer to Plaintiff Willie Key unless otherwise noted.

## BACKGROUND AND CLAIMS

On February 15, 2011, the Plaintiff filed a Charge of Discrimination with the EEOC. He claimed that from August 20, 2010, to February 15, 2011, he was denied a reasonable accommodation when he was written up for absenteeism when his disability erupted, and that white employees with disabilities were not written up. The EEOC provided the Plaintiff a letter of dismissal and notice of right to sue.

The Plaintiff's Complaint, filed on September 27, 2011, includes the allegation that he missed work due to his illness and that the Defendant failed to accommodate his disability, which led to negative employment consequences and the termination of his employment. Additionally, the Plaintiff alleges that the Defendant failed to accommodate his need to avoid excessive heat when he had an insulin pump by "either reassigning him or moving him to a different job." (Compl. ¶ 14, ECF No. 1.)

The Defendant argues that because the Plaintiff's EEOC Charge did not include the claim that he was denied an accommodation by reassignment to a different job, but only addressed the write-ups for absenteeism, the former is not an exhausted claim that is properly before the Court. The Defendant notes that neither the EEOC Charge nor the Defendant's response to the Charge address the insulin pump that brought about the temperature restrictions. Moreover, the insulin pump restrictions were put in place in February 2010, six months before the date the Plaintiff indicates in his EEOC Charge that he began experiencing discrimination.

The ADA adopts the same procedural prerequisites as Title VII. *See* 42 U.S.C. § 12117(a). These procedural prerequisites provide that (1) a plaintiff must file a timely charge with the EEOC and (2) receive a right to sue letter from the EEOC. 42 U.S.C. § 2000e-5(b), (e),

and (f). After receipt of the right to sue letter, a plaintiff has 90 days to bring suit in federal court. 42 U.S.C. § 2000e-5(f)(1). A plaintiff may not bring a claim that was not originally included in the EEOC charge. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). These statutory requirements are preconditions, similar to statutes of limitations and, if not satisfied, are grounds for dismissal unless waived by the defendant. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). This rule serves the purpose of affording the EEOC the opportunity to settle the dispute between the employee and employer, and to put the employer on notice of the charges against it. *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003). Claims that are not explicitly alleged in the EEOC charge may still be brought, however, if they are "like or reasonably related" to one of the EEOC charges and can reasonably be expected to grow out of an EEOC investigation of the charges. *Id.*

The Plaintiff has fashioned his ADA claim and, specifically, his complaints about his employer's failure to adjust for his temperature restrictions, the removal of the insulin pump, and his subsequent absences in such a way as to tie them all to the same substantive claim—a failure to accommodate his disability. The Plaintiff maintains that his termination for violation of the absenteeism policy was actually brought about by the Defendant's earlier failure to accommodate his insulin pump temperature restrictions. On the other hand, it is not clear that an investigation into the Defendant's response to the Plaintiff's absences would have naturally led to an investigation into the Defendant's earlier response to the Plaintiff's insulin pump restrictions.

Because the unique circumstances of this case present a close call on the procedural issue and because, even when the additional allegation regarding the temperature restriction

accommodation is considered, the Plaintiff's claim fails on the merits, the Court will decide the Plaintiff's failure to accommodate claim as he presents it in the Complaint and argues it to the Court in opposition to summary judgment.

### STATEMENT OF FACTS

Defendant U.S. Steel, as part of the steelmaking process, uses a product called coke to fuel its blast furnaces. The Defendant operates a Coke Plant where coke is made by processing coal at extremely high temperatures in coke ovens. Fifty-seven coke ovens are stacked in rows in a heavy industrial area outside the Coke Plant, known as the Coke Battery. Because all employees working in the Coke Plant work in outdoor areas or near coke ovens, they are exposed to extreme temperatures, both hot and cold.

The Plaintiff worked for the Defendant from 2006 to 2011. He was hired as a Utility Technician and became a member of the Local 1014 Union. He was assigned to work in the Coke Battery area of the Coke Production Division on daily, rotating shifts. He signed a Memorandum of Understanding, in which he acknowledged that he would not be eligible to transfer out of the Coke Plant for a period of six years, or until September 2012. He served in several positions, including Battery Utility, Door Adjuster, Charge Car Operator, Door Cleaner, and Damperman. The Area Manager, James Penman, was his supervisor throughout his employment.

The Plaintiff is an insulin-dependent diabetic. In a letter dated February 19, 2010, Dr. Zeitoun, the Plaintiff's treating endocrinologist, stated that the Plaintiff had been under his care since August 2009, had an insulin pump inserted in October 2009, and that the Plaintiff was

released to work with the restriction of no exposure to temperatures greater than 98.6 degrees due to the type of insulin used in his pump. During his return to work exam at the Defendant's Plant Medical Facility on February 26, 2010, Dr. Gardner approved the Plaintiff to return to work with the temperature restriction. After researching the pump manufacturer recommendations, Dr. Gardner added that the Plaintiff could not be exposed to temperatures colder than 36 degrees.

Penman, as the Area Manager for Coke Production, was advised of the Plaintiff's temperature restrictions and asked to determine whether the restrictions could be accommodated. That same day, Penman informed the Medical Department that the temperature restrictions could not be accommodated because Coke Plant employees work outside much of the time, where temperatures could not be controlled. He explained that between the ambient temperatures and the heat generated by the coke batteries, employees were often exposed to temperatures outside the restricted range. According to Penman, there were no jobs in the Coke Division in which the Plaintiff's restrictions could be accommodated.

The Plaintiff did not work at the Coke Plant while he had the insulin pump in place. In July 2010, the Plaintiff had the insulin pump removed so the temperature restrictions would be lifted and he could return to work. The Plaintiff attempted to control his diabetes with insulin shots, but claims that he had difficulty doing so.

Throughout his tenure at U.S. Steel, the Plaintiff had an extensive discipline history related to his absenteeism. Some portion of the Plaintiff's attendance problems were related to his diabetes, particularly his noncompliance with his diabetes treatment and inability to control his diabetes. From September 2006 through January 2011, the Plaintiff was absent 620 days out

5

of 1,185 possible work days. After missing several scheduled work days in January 2011, the Defendant issued the Plaintiff a 5-day suspension. Although the Plaintiff submitted a certificate to return to work authored by a doctor, the Defendant's Labor Relations Representative, Rita Stasik, noted problems with the documentation that led her to believe it did not justify his absences. The Plaintiff then missed eight more scheduled days of work. His documentation included multiple notes from three different medical providers in three different cities. With regard to one facility, the Plaintiff provided three different notes with varying dates documenting when the Plaintiff was under care and unable to work. According to Stasik, the absenteeism notes were vague, contained inconsistencies, did not specify the medical condition for which the Plaintiff sought treatment, and did not state that the Plaintiff was unable to work for the entire period he missed his scheduled shifts. She doubted the accuracy of some of the notes because dates had been crossed off or written over. She concluded that the Plaintiff went to different doctors in an attempt to justify his absences, and that these documents did not satisfy Coke Plant procedures.[2]

On January 21, 2011, Stasik gave the Plaintiff a 5-day suspension for unjustified absences, and then presided over a preliminary hearing related to the discipline. After the hearing, the Plaintiff's suspension was converted to a discharge. The Plaintiff challenged his discharge through the Collective Bargaining Agreement grievance procedures, and he was allowed to return to work pending resolution of the grievance. At all stages of the grievance process, including arbitration, the Defendant's decision to terminate the Plaintiff's employment

---

[2] In addition to the requirements in the basic labor agreement, the Defendant implemented special rules and procedures for Coke Plant employees to combat the high rate of absenteeism at the Coke Plant.

was affirmed and upheld.

The Coke Batteries operate 7 days a week, 24 hours a day, and employees work rotating shifts. When employees fail to appear for their scheduled work, other employees with specialized training must be called into work or required to work overtime. Coke Plant employees were informed that "absenteeism hinders proper operation of the facility, and has negative impact on the quality of life of co-workers. It can pose safety issues as well as negatively impact out environmental compliance." (Penman Aff. ¶ 6; Pl.'s Dep. 148.)

## STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Magnus v. St. Mark United Methodist Church*, 688 F.3d 331, 336 (7th Cir. 2012). The Court draws all reasonable factual inferences in favor of the nonmoving party. *Id.* (citing *Spivey v. Adaptive Mktg., LLC*, 622 F.3d 816, 822 (7th Cir. 2010)). But before the nonmoving party "can benefit from a favorable view of evidence, he must first actually place evidence before the courts." *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 845, 849 (7th Cir. 2010) (internal quotation marks and citation omitted). Simply showing that there is "some metaphysical doubt as to the material facts" will not defeat a motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted); *see also Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir.

2008). "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute."

*Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008).


## ANALYSIS

A.      **ADA Failure to Accommodate Claim**

The Plaintiff claims that his employer is liable to him under the ADA because it failed to

reasonably accommodate his disability—insulin dependent diabetes. To prevail on a failure to

accommodate claim, a plaintiff must show that (1) he is a "qualified individual with a disability,"

(2) the defendant was aware of his disability, and that (3) the defendant failed to reasonably

accommodate the disability. *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005);

*see also Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 789 (7th Cir. 1999) (stating that a

prima facie case for failure to accommodate under the ADA requires a plaintiff to show that: (1)

he was or is disabled; (2) the defendant was aware of his disability; and (3) he is a qualified

individual who, with or without reasonable accommodation, can perform the essential functions

of the employment position that he held).

In his briefing to this Court, the Plaintiff devotes a great majority of the discussion of his

ADA claim to establishing that his insulin dependent diabetes substantially limits him in the

major life activities of eating and working. Likewise, the Defendant puts forth considerable

effort to argue that the Plaintiff's diabetes does not render him disabled under the ADA. To this

end, the Defendant moves to strike the affidavit of the Plaintiff's treating endocrinologist on

grounds that it is not specifically directed to the facts and circumstances surrounding the Plaintiff

and his diabetes. The Court need not decide whether the Plaintiff has a disability, as there is no

issue of fact as to whether he was a "qualified individual," and the Defendant is entitled to summary judgment on the ADA claim.

An individual is only "qualified" under the ADA if he is able, "with or without reasonable accommodation, [to] perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The Plaintiff maintains that he was unable to successfully manage his diabetes, which was why he was absent so often from work and was substantially limited in his major life activities. He asserts that "[i]f he is not able to manage his diabetes, being on coke battery would be very treacherous work when considering the dangers associated with the job." (Resp. 12, ECF No. 36.) He notes that during a diabetic spell, he would be "a danger to himself and others." (*Id.* at 13.) Therefore, he had an insulin pump implanted to better regulate his blood sugar levels.  However, with the pump in place, he could not be exposed to extreme temperatures, defined as temperatures greater than 98.6 degrees and less than 36 degrees. All jobs in the Coke Plant involve work in areas that expose employees to temperatures outside these ranges.

The Plaintiff does not dispute that jobs in the Coke Plant involved exposure to extreme temperatures. He asserts that, as a reasonable accommodation, the Defendant should have assigned him to another position in a temperature regulated environment. "[T]he Plaintiff must show that a reasonable accommodation could be made that would enable him to carry out the essential functions of his job." *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013). The ADA defines a "reasonable accommodation" to include:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, *reassignment to a*

*vacant position*, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9) (emphasis added); *Jackson v. City of Chi.*, 414 F.3d 806, 811 (7th Cir. 2005). Because the Plaintiff "bears the burden of establishing that []he can perform the essential functions of [his] job with or without reasonable accommodation, []he has not met this burden if the only accommodation []he has ever suggested is not reasonable." *Gratzl v. Office of Chief Judges of 12th, 18th, 19th, & 22nd Judicial Circs.*, 601 F.3d 674, 680 (7th Cir. 2010) (quotation marks and citation omitted); *see also Majors v. Gen. Elec. Co.*, 714 F.3d 527, 534 (7th Cir. 2013) (granting summary judgment for employer where the only accommodation suggested by the plaintiff was unreasonable).

The Plaintiff provides very little to this Court in support of his assertion that his reassignment to a difference position was "reasonable," despite the fact that it was his burden to do so. *See Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001) ("It is the plaintiff's burden to show that a vacant position exists for which he was qualified."). Instead, the Plaintiff complains that Penman did not seek out other jobs for him by reviewing open postings, or talking to supervisors of other departments. This proves very little, as "the failure to engage in the interactive process required by the ADA is not an independent basis for liability under the statute." *Rasden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013). Rather, the failure to engage in the process "is actionable only if it prevents identification of an appropriate accommodation for a qualified individual." *Id.*; *see also Majors*, 714 F.3d at 535 (stating that the plaintiff's argument that the employer did not engage in an interactive process to determine whether a reasonable accommodation existed was immaterial because the plaintiff did not first

10

establish that she was a "qualified individual"); *Jackson*, 414 F.3d at 813 (holding that the court

only considers whether there was a breakdown in the interactive process if the plaintiff first

establishes a genuine issue of material fact regarding the availability of a vacant position to

accommodate the employee); *Ozlowksi*, 237 F.3d at 840 (reasoning that because the failure to

engage in the interactive process does not, by itself, give rise to relief, the court only looks to the

process if there is a genuine issue of material fact regarding the availability of a vacant position).

Thus, even if the Plaintiff were correct concerning Penman's obligations, he has not established

a prima facie case under the ADA.

First, the Plaintiff has not presented evidence from which a reasonable fact finder could

infer that any positions were available during the time he sought an accommodation for his

temperature restrictions. *See Jackson*, 414 F.3d at 813 (noting that an employer is not required to

"manufacture a job that will enable the disabled worker to work despite his disability") (quoting

*Hansen v. Henderson*, 233 F.3d 521, 523 (7th Cir. 2000)). Because he has not identified a single

vacant position, neither has he identified a triable issue whether he was qualified for any such

position. *See Jackson*, 414 F.3d at 813 (noting that an employer's obligation extends only to

positions for which the employee is otherwise qualified). For example, although the Plaintiff

believes that another employee with an insulin pump worked as a maintenance manager, he

provides no evidence from which it can be inferred that a maintenance position existed, or that

he was qualified for a maintenance position.[3]

---

[3] Penman testified in his deposition that the Plaintiff "would have no ability to go into maintenance, he would have to be a craftsmen to go into maintenance." (Penman Dep. 53, ECF No. 27-5 at 13.) Penman noted that the union posted the dates for the test employees were required to pass to enter a learning program for maintenance positions, and that the Plaintiff could have tested to go into maintenance.

An additional component in this case is whether the Plaintiff could have obtained a vacant position without violating another employee's contractual seniority rights. When the Plaintiff began his employment, he signed an agreement that prevented him from transferring out of the Coke Division for six years. Under these circumstances, the Supreme Court's decision in *U.S. Airways, Inc. v. Barnett*, 553 U.S. 391, 403 (2002), is controlling. In *Barnett*, the Court addressed the conflict between the interests of a disabled worker seeking assignment to a particular position as a "reasonable accommodation" and the interest of other employees with superior bidding rights under an employer's seniority system. The Court held that an employer need not demonstrate on a case-by-case basis that its seniority system should prevail over an otherwise reasonable accommodation request. *Id.* at 403 ("[I]t would not be reasonable in the run of cases that the assignment in question trump the rules of a seniority system. To the contrary, it will ordinarily be unreasonable for the assignment to prevail.").

The Court, however, also adopted a fact-intensive exception to this general rule that permits a court to find that "special circumstances" trump a seniority policy in certain circumstances. *Id.* at 405 (noting that an employee "remains free to show that special circumstances warrant a finding that, despite the presence of a seniority system (which the ADA may not trump in the run of cases), the requested 'accommodation' is 'reasonable' on the particular facts"). Here, the Plaintiff simply ignores the contractual implications, making no effort to establish that special circumstances existed that made reassignment to another position a reasonable accommodation. The Plaintiff does not provide a single example of a instance where the Defendant made an exception to its seniority system, much less in circumstances similar to his.

12

To be entitled to a reasonable accommodation, and thus prove that the Defendant is liable under the ADA for failing to provide one, the Plaintiff must establish that he is a qualified individual with a disability. Yet, the Plaintiff has presented no evidence that he could perform the essential functions of a Coke Plant employee with or without a reasonable accommodation. The only accommodation he suggested is, as a matter of law, not a reasonable accommodation and therefore not required under the ADA.

The Plaintiff asserts that the Defendant's decision to terminate his employment also violated his rights under the ADA. The Plaintiff argues that the Defendant's refusal to accommodate his temperature restrictions caused him to have the pump removed, which in turn made it impossible for him to manage his diabetes and led to the absences that the Defendant used to terminate his employment. Although it appears that the Plaintiff is attempting to set forth a separate ADA claim related to his termination, this claim ultimately depends on the Plaintiff first proving that the Defendant was required to assign him to a position that would accommodate his insulin pump temperature restrictions. Therefore, the argument is a restatement of his failure to accommodate claim.

In fact, a stand alone claim challenging his termination for absences would have no merit. The Plaintiff admits that he was unable to control his diabetes without the pump and "the ADA does not protect persons who have erratic, unexplained absences, even when those absences are a result of a disability." *EEOC v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 948 (7th Cir. 2001) (quoting *Waggoner v. Olin Corp.*, 169 F.3d 481, 484 (7th Cir. 1999)). "Attendance at the job site is a basic requirement of most jobs," *Waggoner*, 169 F.3d at 484, "especially . . . in factory positions . . . where the work must be done on the employer's premises," *Javanovic v. In-Sink-*

*Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 900 (7th Cir. 2000). The Defendant's facility

was no exception. When the Plaintiff was not at work, he could not perform the essential

functions of the job for which he was hired. When he missed work, his employer was forced to

call other unscheduled employees with specialized training to work his shift or mandate that

other employees work overtime.

Because the Court has already determined that assigning the Plaintiff to another position

was not a reasonable accommodation, the Defendant is entitled to judgment as a matter of law on

the Plaintiff's ADA claim.


**B.      Title VII Claim for Race Discrimination**

The Plaintiff, who is African-American, claims that the Defendant's failure to

accommodate his disability "had a racial component." (Pls.' Mem. of Law 28, ECF No. 36.) He

maintains that a similarly-situated white person was given an accommodation when he was not.

The Plaintiff submits that the Defendant knew that if it did not accommodate his disability, he

would be absent from work and could then use these absences to terminate his employment.

Title VII makes it "an unlawful employment practice for an employer . . . to discharge

any individual, or otherwise to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's

race." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove discrimination through either the direct

method or indirect method. Under either method, the appropriate summary judgment question is

whether, construing all the facts and reasonable inferences therefrom in favor of the plaintiff, a

reasonable jury could find that the employer took an adverse employment action against the

14

plaintiff because of his race. *See Rudin v. Lincoln Land Cmty. College*, 420 F.3d 712, 719–20 (7th Cir. 2005); *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940 (7th Cir. 1997). The Plaintiff offers insufficient evidence from which a jury could conclude that the Defendant refused to accommodate him because of his race. Nor does his evidence establish a prima facie case of discrimination.

The only evidence the Plaintiff presents is that another employee, named Russell Waytovich, had diabetes and worked in the coke division as a maintenance manager. The Plaintiff's argument in response to the Defendant's Motion for Summary Judgment, in its entirety, is that "Penman pointed out that Way[to]vich was accommodated for his diabetes related condition and worked mainly in the maintenance division. This leads to the conclusion that whites were accommodated in their disability while nonwhites were not." (Pls.' Mem. of Law 29, ECF No. 36.) Penman, however, never testified that the Defendant offered Waytovich an accommodation. His testimony was simply that Waytovich was an employee who had an insulin pump. (Penman Dep. 41, ECF No. 37-1 at 28.) There is no evidence in the record to suggest that Waytovich's position was given to him *as an accommodation* for his diabetes or his insulin pump, or that Waytovich even had any work restrictions, much less restrictions related to temperature exposure. When a plaintiff is relying on the evidentiary boost that a prima facie case provides to infer that discriminatory animus prompted the employment decision, the similarly-situated employee he compares himself to must be "directly comparable to the plaintiff in all material respects." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (quotation marks omitted); *see also Crawford v. Ind. Harbor Belt R. Co.*, 461 F.3d 844, 846 (7th Cir. 2006) (the question is whether "members of the comparison group are sufficiently comparable to [the

plaintiff] to suggest that [the plaintiff] was singled out for worse treatment"). Here, there is nothing to show how Waytovich's situation was similar to the Plaintiff's in any respect, except that they both used an insulin pump, and the comparison is useless.

The Plaintiff's scant evidence of discrimination is not sufficient to create a genuine issue of material fact that the Defendant refused to accommodate his disability because of his race, and the Court need not address the parties' dispute regarding the validity of the Defendant's stated reason for releasing him. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").


**C.      State Law Claims**

The federal statute that allows supplemental jurisdiction of state law claims also provides that the district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) (noting that established law of this circuit is that the "usual practice" is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed before trial). The Court declines to exercise supplemental jurisdiction over the Plaintiffs' intentional infliction of emotional distress claim, or Luann Key's loss of consortium claim.


**CONCLUSION**

For the reasons stated above the Motion of Defendant Unites States Steel Corporation for

Summary Judgment [ECF No. 24] is GRANTED with respect to the federal claims, the

Plaintiff's Motion for Summary Judgment as to Liability [ECF No. 28] is DENIED, and the

Defendant's Motion to Strike Dr. Zeitoun's Affidavit [ECF No. 41] is DENIED AS MOOT. The

Plaintiff's state law claims are dismissed without prejudice. The Clerk will enter judgment in

favor of the Defendants and against the Plaintiff on the American with Disabilities Act claims

and Title VII claims.

SO ORDERED on February 25, 2014.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION

17